THE FRANKLIN SAVINGS BANK v. C. J. COLBY, ANNA W. COLBY, SOUGHEGAN NATIONAL BANK, AMERICAN EXCHANGE NATIONAL BANK, AOHUELOT NATIONAL BANK, *et al.*, Appellants.

**Payment:** MORTGAGE: *Principal and agent.* A mortgagee of land authorized by one to whom he has assigned the mortgage to collect the notes secured thereby, is not authorized thereby to receive other notes in payment.

**SAME:** *Notice.* That one of several notes secured by mortgage is paid a considerable time before maturity to the mortgagee who is authorized by the assignee of the mortgage to collect the notes, is not necessarily notice to the assignee that the mortgage has been satisfied, and other notes and a mortgage taken in lieu thereof by the mortgagee.

**Payment:** BILLS AND NOTES: *Innocent Purchaser.* The maker of notes secured by mortgage, who gives a second series of notes and mortgages to the mortgagee, knowing that the first notes have been transferred, is not thereby relieved from liability to innocent holders for value of such first notes.

**SAME:** *Assignment.* Where a mortgage and the notes secured thereby are assigned by the mortgagee, and the assignor does not record his assignment, and subsequently the mortgagee, without authority from the assignee, takes another mortgage on the same property, and new notes in renewal of the first mortgage and debt, and releases the first mortgage of record, and transfers the new notes to a first national bank, but does not inform the bank of the security, and does not assign it, the second mortgage does not follow the debt it was given to secure. National banks are forbidden by act of congress to deal in real estate securities as original investments

**ELECTION.** The assignee of a mortgage did not record its assignment, and the mortgagee subsequently, without authority, released the mortgage, and took a new mortgage and notes in renewal of the old ones, and sold the new notes, and afterwards made a trust deed for the benefit of his creditors. including the assignee of the first mortgage. The assignee of the first mortgage placed his assignment on record, and began action to foreclose. *Held*, that the contribution toward the expense of foreclosing the trust deed, made for the assignee by one whose authority to do so is not shown, is not an election to take under the trust deed.

Release: MORTGAGE.  A mortgagee of land cannot rightfully release
the mortgage after an assignment thereof, unless authorized by
the assignee.

Evidence.  Evidence given on one trial is inadmissible on a second
trial in the absence of any explanation for the failure to call the
witnesses who gave the same.

*Appeal from Pottawattamie District Court.*—HON.
WALTER I. SMITH, Judge.

SATURDAY, MAY 14, 1898.

ACTION in equity for judgment on one promissory
note executed by the defendants C. J. and Annie W.
Colby to Kimball-Champ Investment Company, and for
decree foreclosing a mortgage on real estate executed
by said Colbys to secure the same.  The issues and facts
appear in the opinion.  Judgment and decree were ren-
dered in favor of the plaintiff.  Defendants appeal.—
*Affirmed.*

*Stone & Dawson* for appellants.

*Sims & Bainbridge* for appellee.

GIVEN, J.—I.  Appellant's counsel state the facts
as follows:  February 14, 1889, the principal defend-
ant, C. J. Colby, made his three notes, aggregating
eight thousand dollars, due in one, two, and three years,
to the Kimball-Champ Investment Company, and gave
a mortgage securing the same on the property
in controversy, to the company.  March 5th the
company sold the notes to the Franklin Savings
Bank, delivering at the same time a blank assignment
of the mortgage.  The assignment remained in blank
until it was returned to Council Bluffs, presumably
about the time it was recorded, and then the name of
the Franklin Savings Bank as assignee was filled in by

A. D. Annis, of Council Bluffs. In January, 1890, before the first note was due, J. F. Kimball, president of the Kimball-Champ Investment Company, entered into negotiations with Colby to take up the mortgage in suit, and have him execute a new one in place of it. The company was the regular correspondent of the Franklin Savings Bank in Council Bluffs, and by the uniform course of business had entire charge of the collection, management, and renewal of the paper from this locality owned by the bank, and sold to it by the company. Kimball told him the company had one note (the one that would come due the next month), and that the other two, which were not due for more than a year and two years, respectively, were East. Colby agreed to the renewal, and early in February, and before the first note came due, Colby executed and delivered to the company new notes and a new mortgage for the same amount, the old note was delivered up, and a release of the old mortgage in the following form, "Released, February, 1890. J. F. Kimball, President," was written in the margin of the record of the old mortgage, which was in the name of the Kimball-Champ Investment Company at that time, no assignment having been filed by the Franklin Savings Bank or any other party. The new notes were shortly afterwards sold or delivered as collateral to the appellant banks. The second note of the original issue was afterwards delivered up according to agreement by the plaintiff and Kimball to the defendant, but the third note was not, and is the one now sued upon. In July, 1891, Kimball and Champ, knowing that they were liable to the plaintiff for the Colby note still held by it, and not paid by them, and being about to fail, made entries on their books, both personal and of the company, formally assuming a personal liability to the plaintiff for the amount of the note. Immediately thereafter they made a general assignment of the company,

and at the same time executed a trust deed to A. T. Elwell securing the amount due the plaintiff with a number of other debts similarly secured. October 10, 1891, an action to foreclose this trust deed and to recover the amounts due was brought by the trustee, all except one of the beneficiaries accepting under it, and this plaintiff contributing with the others to the maintenance of the suit. October 30, 1891, the assignment to the plaintiff was placed on record. July 1, 1893, the suit of Elwell v. Kimball being still pending and undecided, this suit was begun. October 25, 1893, the Elwell suit was decided in favor of the Omaha National Bank, which claimed the property therein involved on an attachment, and is now pending an appeal in this court. No disclaimer of an interest in the Elwell trust deed, or withdrawal from the suit to foreclose it, has ever been made by the plaintiff. Appellee's counsel concede this statement to be substantially correct except in the following particulars: They deny that the investment company was the regular correspondent of the plaintiff bank, and had charge of the collection, management, and renewal of the paper from the locality of Council Bluffs which had been sold to it by the investment company. They deny that Kimball told Colby, at the time of the transaction in question, that he (Kimball) then had one of the notes. They also deny that the plaintiff bank accepted, as one of the beneficiaries, under the Elwell trust deed, or that it contributed to the maintenance of the suit to foreclose that deed.

II.  We first inquire as to the release of the first mortgage. Plaintiff insists that it is not a satisfaction of the mortgage, for that it does not purport to have been executed for, nor by authority of, the investment company. Taking the mortgage and release together, there can be no doubt but that Mr. Kimball executed the release as president of the company, and for it under his authority as president.

If this company was claiming under the mortgage, the release might be sufficient as against it, yet not as to this plaintiff. By the transfer of the notes and mortgage plaintiff took all rights of the investment company therein, and that company could not thereafter rightfully release the mortgage unless authorized by the plaintiff. We do not think that any such authority is shown. No doubt Mr. Kimball, acting for the company, in taking the second notes and mortgage, and in disposing of said notes, and in entering the release of the first mortgage, intended that the company should become debtor to and would pay the plaintiff the notes which it held; but there is no evidence that the plaintiff authorized such an arrangement. The extent of the authority given to the investment company was to collect the notes which plaintiff purchased from it, but this did not authorize the company to receive other notes in payment. However honest the purpose may have been in taking the second notes and mortgage in satisfaction of the first, and in entering the release, it was clearly unauthorized, and a fraud upon the plaintiff. It is contended that by receiving payment of the first and second notes through the investment company the plaintiff ratified its said action. Plaintiff collected notes purchased from the company through it, sometimes sending notes, at maturity for collection, and sometimes receiving payment before the notes were sent, in which event the notes were surrendered. Plaintiff having received payment of the first two notes, they were surrendered to Mr. Colby. That one of them was paid a considerable time before maturity did not necessarily indicate to plaintiff that other notes and mortgage had been taken, and defendants' mortgage satisfied. Indeed, plaintiff knew nothing of that transaction until long after the payments were received, There

was no ratification of the acts of the investment company by receiving the payments of the first two notes. It is further insisted that plaintiff elected to take under the trust deed, and thereby ratified the acts of the investment company. As will be seen further on, we are of the opinion that the plaintiff did not so elect, and therefore did not ratify the acts of the investment company by such an election. Our conclusion upon this inquiry is that the plaintiff neither authorized nor ratified the taking of the second notes and mortgage in satisfaction of the first, nor the entering of said release; and that, if nothing further appeared there could be no question of plaintiff's right to a foreclosure of its mortgage.

III. It further appears that the second series of notes was transferred to the defendant banks,—to one as collateral and to the others as purchasers,— before plaintiff's assignment of the first mortgage was recorded, and without any knowledge on the part of the said banks of that assignment. In *Jenks v. Shaw*, 99 Iowa, 604, this court, after a review of the cases, said, in conclusion, "that the rule in this state is that the assignee of a debt secured by mortgage must give notice on the record of the transfer to be entitled to preference over subsequent purchasers or mortgagees without notice of the transfer." The case also recognizes the rule that the security follows the debt without assignment; that is, that where a transfer of the security is intended, it follows a transfer of the debt without an assignment of the security. Ordinarily it is so intended, but not necessarily so. It does occur that notes secured by mortgage are assigned and received without intending thereby to convey any interest in the mortgaged property. We now inquire whether the defendant banks are subsequent purchasers or mortgagees, so as to be within the rule announced in *Jenks v. Shaw*. In appellants' abstract

it is said as follows concerning the transfer of the second series of notes to the defendant banks: "The receipt of the notes was acknowledged by all the defendant banks by letters or credit slips. The cashiers or other officers acted for the banks. They never saw or had in their possession the original mortgage given by Colby and wife to secure these notes before July 21, 1891, and did not have it before them when they accepted the notes. No abstract of title to the property covered by the mortgage was submitted when the notes were purchased, and no opinion as to the title was ever procured from any attorney. Each of the defendant banks is a national bank." It does not appear that any mention was made of this second mortgage to any of the defendant banks until long after the transfer of the notes had been made, and then only to one of them in a letter saying, "The Colby notes that we put in are secured to us by first mortgage on valuable real estate near the city." We are in no doubt but that the investment company intended to transfer, and the defendant banks to receive, these second notes without any reference whatever to the mortgage. Two quite satisfactory reasons appear for this conclusion: The investment company, in taking the second mortgage without authority, might well hesitate to include it in the transfer; and the banks, being national banks, and forbidden by act of congress from dealing in real estate securities as original investments, we may presume did not desire the mortgage security, but rested upon the indorsement of the investment company. Such being the facts, the security did not follow the transfer of the debt, and the defendant banks acquired no interest in the mortgaged property, and are not within the rule of *Jenks v. Shaw.* They were not deceived into taking these notes by the plaintiff's omission to record its assignment of the first mortgage, nor were they prejudiced thereby.

IV. In the trust deed executed to Mr. Elwell, plaintiff and others are named as beneficiaries, the plaintiff to the amount of two thousand, seven hundred dollars. It does not clearly appear upon what this admitted indebtedness is based, but we are inclined to think that it was on account of the note in suit.

The plaintiff knew nothing about the execution of this trust deed, but it is contended that thereafter it elected to take under that deed, and it is therefore estopped from now claiming under the first mortgage. The evidence upon which this claim is made is that of Mr. Congdon and Mr. Parrish, given on the trial of the case to foreclose the trust deed, and of a certain letter and a decree of the court in that case.

The testimony of Mr. Congdon and Mr. Parrish given on the other trial was clearly inadmissible, and must be excluded under the objection of the plaintiff that it is incompetent, immaterial, and not the best evidence. No reason appears why these witnesses were not called upon the trial of this case. The letter relied upon is as follows: "A. W. Sulloway, Pres. Frank Proctor, Cashier. The National Bank of Franklin, N. H. Franklin Falls, N. H., June 6, 1892. G. A. Litchfield, Esq., Tr., Keene, N. H.—Dear Sir: Herein inclosed find our dft. on Boston for $118.97 in pmt. of amt. due from the Franklin Savings Bank and the Franklin National Bank acct. of retainer of Messrs. Congdon & Clarkson, in re Elwell trust deed. We understand from Mr. J. W. Squire that you have advanced this amount for our acct. Sav. Bk., $85.89; Nat. Bk., $33.08,—$118.97. Very respectfully, Frank Proctor, Cashier." Plaintiff's objection to this letter as incompetent must also be sustained, for it will be observed that it does not even purport to be from, nor by authority of, the plaintiff, but from one of the other beneficiaries named in the trust deed, the National Bank of

Franklin, N. H.   True, it says, "in pmt. of acct. due from the Franklin Savings Bank and the Franklin National Bank," but it does not appear that the payment was authorized by the plaintiff.   It is said that these two banks were doing business in the same place, and were practically one concern.   If this be conceded, still the authority of the plaintiff for the payment is not shown with that definiteness that it should be to warrant us in holding the plaintiff to have elected to take under the trust deed, and to have surrendered its rights under its mortgage.   As against the claim that plaintiff so elected, we have the facts that within a few days after the action to foreclose the trust deed was commenced the plaintiff filed its assignment of the first mortgage for record, and six months prior to the trial of that case commenced this action.   Surely, if the plaintiff had intended to rely upon the trust deed, it would not have filed its assignment for record, and would not have com-menced this action.   As already stated, we think the record fails to show an election by the plaintiff to take under the trust deed.   What we have said fully dis-poses of the case as between the plaintiff and the defend-ant banks, and leads to the conclusion that the decree of the district court as between them is correct.

V.   The defendants C. J. and Annie W. Colby gave the second series of notes and mortgage knowing that the first notes had been transferred, and that two of them were then in other hands than those of the investment company.   They seem to have acted upon the confidence that they had in the invest-ment company that it would protect them against said two outstanding notes, but, unfortunately for them, the insolvency of that company has rendered it unable to do so.   If the second notes were given by them as pay-ment for the first, they then should have required the surrender of the first at the time they delivered the

second. If given, as we think they were, in reliance upon the solvency of the investment company, then surely they cannot be heard to question their liability to innocent holders for value of said notes without notice. Our conclusion upon the entire record is that the judgment of the district court should be AFFIRMED.