Keene Five Cents Savings Bank, Appellant, v. D. W. Archer, Lucille B. Archer, Kimball-Champ Investment Co., Chas. R. Hannan, Receiver, and New Hampshire Banking Company.

**Unauthorized Collection:** ratification: *Election of remedies.* A. gave his note, secured by mortgage, payable, at any time, at office of K., which was indorsed to K., and then by K. to B. Though K. had no express authority to receive payment, it assumed that it had, and received in payment of the note money which it had loaned A. It did not turn over the money to B., but, becoming financially embarrassed, executed a trust deed to secure various creditors, naming B. as beneficiary to the amount of such note and a debt owing B. from it. B., with knowledge of all the facts, concluded to accept the benefits of the deed, and took part in suit to enforce it, but it was adjudged void, as a general assignment with preferences. *Held,* that B. ratified the acceptance of the money by K. from A., and was bound by its election of remedy.

*Appeal from Pottawattamie District Court.*—Hon. W. R. Green, Judge.

Thursday, October 19, 1899.

Suit in equity to foreclose a mortgage made by defendants Archer and wife upon certain real estate in the city of Council Bluffs, to secure a note executed by D. W. Archer to one W. F. Wahl, and by him (Wahl) indorsed to the Kimball-Champ Investment Company, and by the investment company indorsed and assigned to plaintiff. Defendants Archer admit the execution of the note and mortgage, but plead payment of the same to the Kimball-Champ Investment Company, that, it is claimed, was at the time acting

as agent for plaintiff. The defendant New Hampshire Banking Company denied the allegations of plaintiff's petition, pleaded payment of the note sued on, and filed a cross petition asking judgment on a note held by it against Archer; and the foreclosure of a mortgage made to secure the same on the real estate covered by plaintiff's mortgage. Some other issues were made by the pleadings, that will be referred to in the body of the opinion. The trial court dismissed plaintiff's petition, and passed a decree foreclosing the mortgage of the New Hampshire Banking Company, and plaintiff appeals.—*Affirmed.*

*Isaac E. Congdon, Finley Burke* and *C. B. Atchison,* for appellant.

*Wright & Baldwin* and *A. W. Askwith* for appellees Archer.

*Stone & Tinley* for appellees Kimball-Champ Investment Company and Charles R. Hannan.

*Sims & Blanchard* for appellee New Hampshire Banking Company.

DEEMER, J.--February 9, 1899, defendant Archer made and delivered to W. F. Wahl his three promissory notes, aggregating eight thousand dollars, due on or before one, two, and three years, respectively, and, in conjunction with his wife, executed the mortgage sought to be foreclosed. This mortgage was duly filed for record, and is prior in point of date to the claims or liens of any of the other parties to the suit. Wahl indorsed the notes, before maturity, to the Kimball-Champ Investment Company, and also assigned the mortgage made to secure the same; and the Kimball-Champ Investment Company sold and transferred all of said instruments to plaintiff. At or about the time of the maturity of the first and second notes, plaintiff returned each of them to the Kimball-Champ Investment

Company for collection.   The investment company collected
or accounted to plaintiff for the amount due on each note,
and there is no controversy over either of these instruments.
The third note was never sent to the investment company,
but remained in the possession of plaintiff from the time of
its purchase down to the commencement of this suit.   On
or about September 30, 1890, Archer, who was then con-
structing a building on the property covered by the mort-
gage, became desirous of securing more money, and
concluded to merge all indebtedness growing out of his build-
ing operations into one mortgage.   Following out his desire,
he applied to the Kimball-Champ Investment Company for
a new loan of eight thousand dollars, and stated to them that
he wished to take up the indebtedness due on the first mort-
gage.   The investment company furnished him the money,
and agreed to take up the outstanding Wahl note, and have
it back within ten days.   The officers representing the invest-
ment company assumed, from their prior dealings with the
plaintiff, that they had authority to accept payment of the
last of the series of notes executed by Archer to Wahl.   One
of them testified:   "As all the notes were payable at the
office of the investment company or Kimball & Champ on
or before date due, we did not consider that we were pre-
suming or assuming anything in accepting payment of the
note held by plaintiff; the assumption being that we had
a right to accept payment, and settle with plaintiff after-
wards, which understanding Archer was cognizant of."
"Through a long course of dealing with the bank of this
nature, and in our capacity, we regarded ourselves as repre-
senting the western interests of the bank, so far as it covered
the territory we operated in, such as collection, and re-in-
vesting the proceeds of such collection for them, in said terri-
tory."   "Frequently we collected notes in the possession of,
and belonging to, plaintiff, and re-invested the proceeds,
without any express direction to that effect, and subsequently
settlements were made with the bank, and our action was

invariably acquiesced in by plaintiff." The other active manager testified to practically the same state of facts. The money to take up the note was never forwarded to plaintiff, and the note was not returned. Shortly after the execution of the second mortgage, the investment company transferred the notes secured thereby to the New Hampshire Banking Company. This last named company had no knowledge whatever, when it purchased the notes, of the agreement between Archer and the investment company. Within a year after these transactions occurred, the investment company became financially embarrassed, and on July 22, 1891, it executed a trust deed to A. T. Elwell, trustee, to secure various creditors therein named in an amount exceeding seventeen thousand dollars. A short time prior to the making of this deed the plaintiff had sent it a note of one Colby for collection. This note had been collected, but the amount thereof had not been remitted at the time the deed was executed. In the trust deed the plaintiff was named as a beneficiary to the amount of the Colby and Archer notes. The plaintiff bank concluded to accept the benefits of the trust, and, in a suit instituted by the trustee to foreclose the deed, it employed counsel, who took an active part in the management thereof. That suit was finally appealed to this court, and the deed was held void, as constituting a general assignment with preferences. See 102 Iowa, 720. The notes executed to Wahl were made payable at the office of the Kimball-Champ Investment Company. The facts above recited are practically undisputed, and the questions presented are almost wholly of law; and these may be reduced to a very narrow compass.

As the Kimball-Champ Investment Company had no express authority to collect the last of the Wahl series of notes, and did not have possession thereof at the time it made arrangements with Archer for its payment, the arrangement made when the second loan was negotiated was not binding on plaintiff, and did not constitute a payment.

*Englert v. White,* 92 Iowa, 97; *Klindt v. Higgins,* 95 Iowa, 529; *Bank v. Colby,* 105 Iowa, 424, and cases cited. And although the note was payable at any time, and at the office of the Kimball-Champ Investment Company, this did not, in the absence of express authority, authorize it to receive payment. *Klindt v. Higgins, supra; Bank v. Ingerson,* 105 Iowa, 349. These rules are not questioned by defendants. Their contention is, however, that, by electing to rely on the trust deed executed to Elwell, and by appearing and endeavoring to enforce the same, plaintiff ratified the acts of the investment company, and is estopped from claiming that the payment made to it by Archer was without authority. They plead the facts above recited with reference to the trust deed as an election or estoppel, and now insist that, under the law as applied to these facts, there can be no recovery. Plaintiff's contention is that it had a right to rely on the trust deed as security for the promise of the investment company to pay the Archer indebtedness, and that by that promise the investment company became the principal in the transaction, and Archer simply a surety; and that, so long as the indebtedness is not paid, it had the right to adopt any legal means to collect the amount due. This argument is certainly ingenious, but we do not think it will bear the test of reason. The Kimball-Champ Investment Company did not undertake to pay the Archer note as a principal. In effect, it received a sum of money from Archer in payment of the plaintiff's note. It did not agree to pay it out of any funds or property that it might thereafter acquire, and no one understood it was entering into an engagement to pay as principal. It was agent of either one party or the other for the payment of the note. It loaned Archer the money, to be sure; but that fact is not controlling, for, in legal effect, the transaction would be the same had Archer obtained his money from some other source. In contemplation of law, it was his money when he left it with them on their promise to take up the Archer note, and their

possession was that of an agent or trustee. Before employ-
ing counsel, and engaging in the attempt to uphold the trust
deed, plaintiff had full knowledge of all the facts; and the
controlling question in the case is, did it, by resorting to
the trust deed, and seeking to enforce the same, either ratify
the transaction between the Investment Company and Archer,
or make such an election of remedies as that it is estopped
from resorting to an action on the note? It certainly had
the right, after being informed of the action of the Invest-
ment Company, to repudiate the same and recover on its note.
See *Bank v. Colby, supra.* But, when it elected to accept the
benefits of the trust deed, it must have been on the theory that
the Investment Company was indebted to it in the amount
attempted to be secured thereby. This indebtedness could
only arise because of the fact that the Investment Company
acted for it in accepting the money on the Colby and Archer
notes; and, if that company acted for it, it was its agent for
the collection of the money. The case of *McLean v. Ficke,*
94 Iowa, 283, is quite in point on this last proposition. It
is there held, in effect, that where a borrower, who has sus-
tained loss through the embezzlement of funds paid by the
lender to one who is the lender's agent, attaches the property
of the agent, alleging that the money embezzled was received
for plaintiff's use and benefit, he waives the right to recover
of the lender. See, also, *Homire v. Rodgers,* 74 Iowa, 395;
*Klocow v. Patten,* 93 Iowa, 432; *Kearney Milling & Ele-
vator Co. v. Union Pac. Ry. Co.,* 97 Iowa, 719. The doc-
trine of election and ratification is very fully discussed in
these cases, and we need not do more in this connection than
call attention to the rules therein announced. We are clearly
of opinion that the plaintiff not only ratified the transac-
tion had between Archer and the investment company, but
that it is bound by the election it made of its remedy. The
fact that plaintiff did not sue the investment company on
its alleged agreement to become responsible to plaintiff for
the amount of the note in suit, is strong confirmation of our

conclusion that the case must be disposed of on the theory of agency, and upon that alone. We have now disposed of the controlling questions in the case, and reach the conclusion that the judgment should be, and it is, AFFIRMED.