## FRANK P. YOUNG, Respondent, v. BANK OF PRINCETON, Appellant.

### Kansas City Court of Appeals, January 5, 1903.

1. **Chattel Mortgages:** DESCRIPTION: EVIDENCE. The description in a chattel mortgage should be so definite that a third person by its aid, together with the aid of the inquiries it suggests, may identify the property; and a description noted in the opinion is held insufficient to warrant the admission of the mortgage in evidence.

2. **Equity:** ATTACHMENT: GARNISHMENT. Plaintiff brought a bill in equity against defendant and others to follow and reclaim a fund he claimed as his own. He subsequently brought suits by attachment against the other defendants and garnished the defendant bank and other persons. *Held*, by the garnishment proceedings plaintiff abandoned his equitable claim.

3. **Banks and Banking:** DEPOSITS: DEBTOR AND CREDITOR: GARNISHMENT. Certain money was deposited in a bank to the credit of L. L. drew his check for the amount in favor of S. This was done at the request of M., who was a surety of L. to S., and M. took the check to the bank and requested it credited to the account of S. which was done, L.'s account being charged therewith. Subsequently L.'s creditor sued him by attachment and garnished the bank. *Held*, that on the deposit the bank became the creditor of L. and on the presentation of L.'s check and charging his account therewith L.'s interest in the funds ceased and the bank became the debtor of S., or if S. refused to accept, of M. and plaintiff's garnishment must fail.

Appeal from Mercer Circuit Court.—*Hon. Paris C. Stepp*, Judge.

REVERSED.

*Alley & Alley* and *Harber & Knight* for appellant.

(1) The check of William A. Lynam to G. W. Squires, or bearer, with authority to fill in full amount said Lynam had in the bank, from time such amount was filled in and bank had knowledge thereof, operated

as an assignment to the legal holders of said check, as against Lynam or any person standing in his place, or in fact any and every person, of such funds so in said bank; and hence said Stiles and Miller being the legal holders, and for a most valuable consideration, of this check, it operated from October 2, 1900, as an assignment to them of all the moneys said Lynam had in appellant bank; and it makes not the slightest difference whether the same was credited to the account of Squires and accepted by him, or he had any knowledge thereof, before the garnishment of October 8, 1900. Albers v. Bank, 9 Mo. App. 59; Burns v. Kahn, 47 Mo. App. 215; Shoe Co. v. Crosswhite, 124 Mo. 34; Loan Ass'n v. Bank, 126 Mo. 82; Bank v. Latimer, 64 Mo. App. 321; Grocer Co. v. Bank, 71 Mo. App. 132, and cases cited; Morrison v. McCartney, 30 Mo. 183; Chouteau v. Rouse, 56 Mo. 67; Lewis v. Bank, 13 Mo. App. 202; Lamp Co. v. Mfg. Co., 64 Mo. App. 115. (2) At the time of the service of garnishment Lynam had assigned for value the amount due him from the bank, and the bank had notice thereof prior to judgment against it, certainly if prior to its answering, the bank could not be held as the debtor of Lynam. See cases cited under paragraph 1; 2 Shinn on Attachment and Garnishment, 538-9, pp. 918, 919; Hendrickson v. Bank, 81 Mo. App. 332; Smith v. Sterritt, 24 Mo. 260; Knapp v. Stanley, 45 Mo. App. 264; Water Co. v. Harkness, 49 Mo. App. 357; Williams v. Scullen, 59 Mo. App. 30; Atwood v. Hale, 17 Mo. App. 81; Bank v. Cushman, 66 Mo. 103; Halker v. Kennessly, 143 Mo. 80. (3) The description of the property contained in said mortgages was wholly insufficient to the maintenance of any action in respect thereto. Jones on Chat. Mort., sec. 55; Stonebraker v. Ford, 81 Mo. 532; Trimble v. Keet, 65 Mo. App. 174; Boeger v. Langerberg, 42 Mo. App. 7; Steinecke v. Uetz, 19 Mo. App. 145; Chandler v. West, 37 Mo. App. 631; Jennings v. Sparkman, 39 Mo. App. 663; Hughes v. Menefee, 29 Mo. App. 192; Estes v. Springer, 47 Mo. App. 99-104. (4) Even if plaintiff had been the owner of the notes,

and mortgages securing them, and there had been a sufficient description of the property, he could only follow the property itself; he could not follow the proceeds of the sale of such property. 2 Cobbey on Chattel Mortgages, sec. 636, p. 637; Ware v. Georgetown Cong., 125 Mass. 584; Waters v. Bank, 65 Iowa 234; Burnett v. Gustafson, 54 Iowa 132.

*Ira B. Hyde & Son* and *Orton & Orton* for respondent.

(1) The mortgaged property was sufficiently identified. That is certain which can be made certain. The authorities in this State only require such particularity of description that third persons by the mortgage itself and such inquiries as it suggests can identify the property. State ex rel. v. Althus, 60 Mo. App. 126; McNichols v. Fry, 62 Mo. App. 16, 17; Bank v. Shackelford, 67 Mo. App. 480; Williamson v. Bank, 69 Mo. App. 376. (2) Parol evidence is admissible to aid the descriptive terms employed in the mortgage and to show whether particular property was embraced. Bank v. Shackelford, 67 Mo. App. 480. (3) The $1,218.54 placed in the Bank of Princeton by defendant Lynam, and transferred to the credit of Squires by Stiles, by direction of Lynam, was attached and the bank garnished by plaintiff before Squires had any knowledge of the transaction. Squires never has accepted the money. He could not have done so after the attachment and garnishment. It then was and remains the property of defendant, Lynam, subject to plaintiff's mortgage and attachment. Sproule & Agnew v. McNulty, 7 Mo. 67; Briggs v. Block, 18 Mo. 283; Ridge v. Olmstead, 73 Mo. 579; Nichols v. Walker, 25 Mo. App. 368; Keithley v. Pitman, 40 Mo. App. 596. (4) The answers and the whole evidence show that Stiles acted solely as the agent of Lynam to give this money to Squires and that he never succeeded in doing so. Stiles has never interpleaded, or in any manner claimed this money as his property, although he was a witness in the case and took

an active interest in the trial. Plaintiff is entitled to this money by his suit in equity and also by his suits of attachment. (5) That under the answer of defendant bank, both as defendant and garnishee, plaintiff was entitled to judgment for this money without any trial, because it admitted receiving the money from Lynam and that it had not paid it to Squires.

SMITH, P. J.—The facts disclosed by the record in this case may be chronologically and briefly stated in about this way, viz.: William A. Lynam, a cattle-trader residing in the northern part of this State, made to Scannel & Patterson his note for $866, to secure which he executed a chattel mortgage in which the property covered by it was described in this way: "Twenty head of one-year-old steers, color red, one black steer calf, one white steer calf, twenty-six head of steers coming two years old, all red." And to Scannell, Foster & Co. said Lynam made a further note for $1,050, to secure which latter he executed a further mortgage in which the property is described as "fifteen reds and roans, one white and four blacks, also twenty-seven head of one-year-old steers, reds and roans." It was provided in each of said mortgages that in case of an attempt to remove the cattle from either Sullivan or Mercer counties the payeees in the notes or their legal representatives might take possession of the cattle, etc.

Before the maturity of said notes the payees therein named indorsed and delivered the same so that they passed into other hands until one Holmes became the legal holder thereof, and after maturity he insisted on payment. Lynam not being able or willing to then make payment, he and the payees applied to the plaintiff herein to carry the same and they accordingly procured the possession of the notes and mortgages from Holmes and entered into negotiations with plaintiff in respect thereto, resulting in Lynam with one Cook executing to plaintiff their joint note for $2,060 with an agreement to transfer to him the mortgage notes as collateral security thereto, and accordingly the payees in the latter

notes with Lynam delivered the same to plaintiff who paid over to them fifteen hundred dollars by a check for $1,000 and the balance in cash. The payees and Lynam, after the receipt of the $1,500, told plaintiff that if he would let them have the notes that they would take them to Holmes, obtain his indorsement thereon and then return them to him. Plaintiff assented to this and delivered to them the notes, but he never saw them again.

It appears from the testimony of Holmes, given at the trial, that he never authorized the payees of Lynam to sell or dispose of the notes. The payees and Lynam paid over to Holmes on the notes the check and money they had received of plaintiff. Holmes testified without objection that the payees assured him that they were to get the money of plaintiff on the note of Lynam and Cook. He further testified that shortly after the mortgage notes were returned to him, and the $1,500 obtained of plaintiff was paid to him, that he told the payees that if Lynam would let him ship the cattle to Kansas City and there sell them and if there was anything over after the payment of the balance due on the mortgage notes that he would pay it to him; and that the latter requested that he wait until a couple of days later and he would ship the cattle and accompany him (Holmes) to Kansas City. This was agreed to and Holmes and Lynam two days afterward went with forty-one head of cattle to Kansas City where the same were sold. Out of the proceeds of the sale Holmes was paid the amount still due on the mortgage notes and the balance of $1,218.54 was deposited in a Kansas City bank to the credit of the defendant, the Princeton bank. The mortgage notes were delivered to Lynam marked paid.

It appears that Stiles and Miller were sureties on a note of Lynam to Squires for $2,500. On October 1, 1900, the day after the sale of the cattle, Lynam gave his sureties a check on the defendant bank for $1,218.54, payable to "G. W. Squires or bearer." On the next day Stiles presented the check to the bank with a request that the amount be placed to the credit of Squires'

account with the defendant bank.   The cashier accepted the check, charged it to the account of Lynam and credited it to the account of Squires.

It appears that the cattle were shipped in the name of the defendant bank, but whether with its knowledge or approval does not clearly appear.   It seems, however, that the Kansas City bank promptly notified the defendant bank of the deposit with it.   It does not appear further than by inference, how the defendant bank became apprised that the deposit was to go to the credit of Lynam's account.   Whether this fact was learned from the Kansas City bank or from Lynam, or otherwise, was not shown.   There is no question but that the amount so deposited was the proceeds arising from the sale of part of the cattle by Holmes, or by Holmes and Lynam, and that it was placed to the credit of Lynam on the books of the defendant bank.   Squires kept an account with the bank, but at the time his account was credited with the amount of the Lynam check he was absent from the State and it does not appear that he was made aware of the credit until the date of his garnishment presently to be mentioned.

To reach the amount thus in the defendant bank the plaintiff brought a suit in equity against Lynam and the said bank.   In his petition he alleged the execution of the notes and chattel mortgages, with a description of the cattle contained in the latter; the purchaser of the same, and that the defendants, Lynam and the bank, had converted the cattle to their own use and had sold the same with notice of the mortgage liens, realizing therefrom the said sum of $1,218.54, which was on deposit in the name of defendant Lynam in the defendant bank; and then prayed that said sum be ordered to be paid to him—plaintiff.   A few days after this suit was brought, plaintiff brought two suits of attachment against Lynam; one on the two mortgage notes and the other on the $2,060 note of Lynam and Cook.   Squires and defendant bank were summoned as garnishees in these attachment suits.   By the pleadings in these several actions the issue was made as to whom the pro-

ceeds of the sale of the cattle belonged. The garnishment was not served until after the giving of the check, the presentation of the same to the defendant bank, the acceptance thereof, and the charging of the same to the account of Lynam and the corresponding entry of a credit therefor on the account of Squires.

It should have been previously stated that when Lynam delivered the check to Stiles and Miller, he directed that the amount of the check be paid to Squires on his note on which they were his sureties, or deposited to his (Squires') credit in the defendant bank.

After the pleadings were all in and before the commencement of the trial, the court consolidated all three actions and thereupon the defendants and garnishee demanded a trial by jury. This was refused and the court proceeded to hear and determine the issues without the aid of a jury.

During the progress of the trial the plaintiff offered in evidence the two chattel mortgages, to the introduction of which the defendant and garnishees objected on the ground that the description in the said mortgages were insufficient, vague and indefinite, etc. The court overruled these objections and admitted them.

The finding and judgment was for plaintiff and against the defendant and garnishee bank for the amount claimed, and the latter appealed.

I. Touching the first assignment of error in respect to the admission of the two mortgages in evidence, it is to be observed that the rule is now well established in this jurisdiction that a mortgage to be effectual must point out the subject-matter of it so that a third person by its aid, together with the aid of such inquiries as it suggests, may identify the property. Stonebraker v. Ford, 81 Mo. 532; Banking Co. v. Commission Co., 80 Mo. App. 443; Jones v. Long, 90 Mo. App. 8; Trimble v. Keet, 65 Mo. App. 174; Boeger v. Langerberg, 42 Mo. App. 7; Steinecke v. Uetz, 19 Mo. App. 145; Chandler v. West, 37 Mo. App. 631; Jennings v. Sparkman, 39 Mo. App. 663; Hughes v. Menefee, 29 Mo. App. 192; Estes v. Springer, 47 Mo. App. 99-104.

It is to be inferred from the recitals in the mortgages already referred to that the cattle intended to be covered by the description were situate in Mercer or Sullivan counties, or in both. Could a stranger with the mortgage description have gone into these counties and with it, or the aid the mortgages suggested, have been able to identify the cattle called for by such description? It is a fact so generally known that we may take notice of it that the prevailing colors of cattle in that part of the State in which the above-mentioned cattle were situate are red and roan, and, therefore, without any mark or brand or situs, except that of county, or other individuating indicia of ownership, how could these cattle described as "red and roan" one and two years old, be identified among the thousands of like colors and ages in these counties? It is true that some of plaintiff's witnesses testified that of the forty-one head of cattle alleged to have been converted they could point out and identify seventeen head of them as the mortgaged cattle, and that they were enabled to do this because they had been familiar with the cattle since their purchase by Lynam, but without this familiarity they could not identify such cattle from the description in the mortgage, or by the aid of such inquiries as it suggested. We are unable to discover anything in the extrinsic evidence or in the pleadings that in any way remedies or cures the defect and insufficiency of the mortgage description. It is clear that the mortgages containing such descriptions, though duly recorded, were wholly inefficacious to impart notice to the bank that any particular cattle were covered by them, and it therefore follows that they were improperly admitted in evidence.

II. The vital question in the case is, whether or not the proceeds of the sale of the cattle at the time of the garnishment belonged to Lynam, for if so then the judgment of the court must be sustained. The theory of the plaintiff's garnishment is that the fund so on deposit belonged to Lynam, so that at the time of the drawing of the check the same was subject thereto. The

garnishment claim to the fund concedes the title therein to be in Lynam and is wholly inconsistent with the claim thereto asserted in the prior equity suit. If the plaintiff was in equity entitled to the fund as owner and holder of the mortgages, then of course the same did not belong to Lynam and was not subject to his garnishment. By the garnishment proceedings he necessarily abandoned his equitable claim and the court seems to have taken that view of the case.

If it be conceded, as it must, that the title to the fund was in Lynam, and that it was properly on deposit in the bank to his credit, then what was there to prevent the exercise by him of his right to make a bona fide disposition of the same? The relation of debtor and creditor existed between Lynam and the bank, and when the latter drew his check in favor of Squires or "bearer" and the bank accepted the same by charging the amount thereof to the account of Lynam and crediting the same to the account of Squires this had the effect to put an end to the right and title of Lynam to the fund. It operated as an assignment. Albers v. Bank, 9 Mo. App. 59; Bank v. Latimer, 64 Mo. App. 321; Burns v. Kahn, 47 Mo. App. 215; Dickinson v. Coates, 79 Mo. 250; Shoe Co. v. Crosswhite, 124 Mo. 34; Building & Loan Assn. v. Bank, 126 Mo. 82. There was, independent of the negotiable quality of the check, ample evidence of a supporting consideration. Nor is there any question as to the bona fides of the transaction in respect to such check. When the bank accepted the check and charged the amount thereof to Lynam's account, this discharged its indebtedness to Lynam as to the amount of the check. Whether the bank paid over the amount of the check so accepted to the bearers, Stiles and Miller, or by their direction entered the same as a credit on the account of Squires with it, was no concern of Lynam for his title in the fund had passed beyond recall. The bank had in consequence of the assignment ceased to be his debtor. The assignment thus made being, as has been stated, prior to the garnishments, it must be regarded as passing a superior right

to the assignee. The assignment being bona fide and based upon a sufficient consideration, was not open to question either by Lynam or the plaintiff, his creditor. Hendrickson v. Bank, 81 Mo. App. 332; Knapp v. Standley, 45 Mo. App. 264; Water Co. v. Harkness, 49 Mo. App. 357; Williams v. Scullin, 59 Mo. App. 30; Atwood v. Hale, 17 Mo. App. 81; Bank v. Cushman, 66 Mo. App. 103; Holker v. Hennessey, 143 Mo. 80; Smith v. Sterritt, 24 Mo. 260. The amount of the check was paid into the bank for the use and benefit of Squires, and the fact that the latter has not demanded it in any way of the bank is of no consequence. The bank is liable to him for it. It could not refuse to pay the same to him nor could it pay the same to Lynam, even if there were no garnishment. Squires has not released or offered to release the bank from its obligation to pay the deposit to him. If it should pay the amount to Lynam, or otherwise misappropriate the fund, it would be liable to Squires; or, if he declined to sue for or to receive the fund, or in any way estopped himself to claim it, no reason is seen why Stiles and Miller may not be entitled to recover it. It was given to them by Lynam as his sureties as an indemnity, and until they are discharged from their liability as his sureties they have a right to it, and especially so if Squires should decline to accept it.

In no view of the case which we have been able to take do we think that the plaintiff has any right to recover of the bank the amount of the fund, the proceeds of the sale of the cattle, in either or any of said actions and proceedings, and without noticing other points discussed in briefs of counsel, we shall reverse the judgment. All concur.