L. A. ANDREW, State Superintendent of Banking, Appellee, v. FIRST STATE BANK OF HOLSTEIN, Defendant, et al., Appellant.

No. 39971.

*Griffin, Griffin & Griffin* and *White & White,* for appellant.

*C. F. Besore, Jr.,* and *Snell Brothers,* for appellee.

Morling, J.—Petitioner held a properly recorded mortgage on cattle, executed by Schutt. On January 2, 1928, the mortgagor, without the knowledge or permission of petitioner, sold  the cattle in Chicago for $4,272.37, and told the purchaser to send the proceeds to defendant First State Bank of Holstein, where he had been doing his banking business. The proceeds of the cattle were by the purchaser placed in the Stock Yards National Bank, which was a correspondent of the Holstein bank's, to the credit of the Holstein bank, which was notified thereof, and which gave credit to the mortgagor therefor. The balance in the Stock Yards National Bank to the credit of the Holstein bank was, on January 6, 1928, reduced to $205.64. This balance was afterwards increased, and the final balance passed into the hands of the receiver of the Holstein bank; but no claim is made on account of this fact above the sum of $205.64. Of the funds of the Holstein bank in the Stock Yards National Bank, $5,280.76 was transferred to the account of the Holstein bank with the Continental National Bank, which was also one of the correspondents of the Holstein bank. The balance in the Continental National Bank to the credit of the Holstein bank was reduced at one time to $1,172.39, and afterwards increased; but the balance to the credit of the Holstein bank in the Continental at the time of closing was appropriated by the Continental to the payment of bills payable of the Holstein bank held by the Continental, and never came into the hands of the receiver, though good collateral to a large amount in the hands of the Continental, belonging to the Holstein bank, was released to the receiver. However, all the funds on deposit in the Continental to the credit of the Holstein bank with which

the funds transferred from the Stock Yards National Bank were commingled, were actually used in payment of the debts of the Holstein bank, and any funds entering into that balance upon which a trust might otherwise be imposed were dissipated, and the trust, if any, dissolved. *Andrew v. State Bank of New Hampton*, 205 Iowa 1064; *Leach v. Iowa State Sav. Bank of Sioux City*, 204 Iowa 497.

Going back to the balance of $205.64 in the Stock Yards National which came into the hands of the receiver: The Holstein bank knew of the mortgage, knew of the sale of the cattle, and knew that the $4,272.37 which it credited to the mortgagor's account was the proceeds of the mortgaged cattle. The president of the Holstein bank says that he assumed that the mortgagor would draw a check against that deposit in favor of the petitioner, and if the check had been presented while the bank was still open, it would have been paid. The mortgagor says that it was his intention, in giving the check, that petitioner was to be paid out of the proceeds of the cattle. We may assume, without deciding, that petitioner had an election to rescind the conditional payment by means of the check, and to follow in the bank the proceeds of his cattle sold without authority and there deposited. The proceeds of the cattle were deposited in the Holstein bank by the mortgagor, and accepted by the bank as funds of the mortgagor, and placed to his credit in his general checking account. Thereby, this fund, as between mortgagor and the bank, became the bank's money, for which the bank was indebted to the mortgagor. On Saturday, January 7, 1928, the mortgagor gave petitioner his check on the Holstein bank for the amount owed on the mortgage, $2,672.10, telling petitioner that he had sold the cattle. Aside from the proceeds of the cattle, the mortgagor did not have enough money in the bank to pay the check. Petitioner says that he "raised no objection to his [mortgagor's] having sold the cattle, as long as he was paying for them." On Monday following, petitioner deposited the check in his bank in Sioux City. Defendant Holstein bank, however, finally closed on the evening of that day, in consequence of which the check was not paid by the bank, though a part payment of the amount of it was made by the mortgagor to petitioner. It does not appear that petitioner has surrendered the check. On the con-

trary, he says that, the latter part of January, "Schutt [mortgagor] gave me some additional security on this check, and anything I got out of it I was to give him credit for." "The additional security Schutt gave me was an assignment of some money he was supposed to have in the bank." The mortgagor testifies:

"I assigned to Mr. Flanders [petitioner], as security, my interest in the depositor's claim in the bank, and also paid him $800 cash * * * If he isn't allowed a preferred claim, I will have to take care of it myself."

Petitioner is, therefore, in this position: He accepted the mortgagor's personal check, drawn against mortgagor's general checking account, for the price of the cattle. The check was conditional payment. Petitioner never rescinded the conditional payment, but, on the contrary, the mortgagor, on the dishonor of the check, was liable to petitioner, as drawer. Petitioner still holds that check and the mortgagor's liability as drawer. As collateral security for the payment of the check and of the mortgagor's liability on it, petitioner holds an assignment of the mortgagor's claim against the bank for the balance of his deposit. Petitioner continues to recognize the bank as the debtor of the mortgagor on account of the receipt of the very funds which he is now claiming as his. Petitioner's claim, in the first instance, after accepting the check with knowledge of the sale of the cattle, was, in the event of its dishonor, against the maker, or mortgagor. Petitioner stands in court still as the holder of the check. He stands here as assignee of the balance of the account on which the check was drawn. His position as holder of the check and assignee of the mortgagor's claim against the bank for the proceeds of the cattle is inconsistent with his claim that he is the original and only owner of those proceeds, and that they are held in trust for him. Petitioner cannot, while continuing his relationship to the mortgagor and the bank as that of holder and payee of the mortgagor's check and the mortgagor's personal liability on the check, and while maintaining the position of owner by assignment of the funds as funds deposited as the mortgagor's money, take the inconsistent position that such funds were never the depositor's money, but were always the petitioner's money. *McLean v. Ficke,* 94 Iowa 283; *Kerr v. Kennedy,* 119 Iowa 239;

*Keene Five Cents Sav. Bank v. Archer,* 109 Iowa 419; *Young v. Bank of Princeton,* 97 Mo. App. 576 (71 S. W. 713). It seems apparent that this claim for preference is in fact made in behalf of the mortgagor.—*Affirmed.*

ALBERT, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.